W. M. and M. P. PERSON, Ex'rs. v. CHARLES PERRY and others.

A surety of a judgment debtor, has an equity to be subrogated to the rights of his creditor, when it has been agreed by several creditors of the same debtor, that his land should be sold, although conveyed before their executions became liens, and the proceeds of such sale should be divided in proportion to the amounts of their judgments—the judgment of the creditor whose debt was secured, being credited with his interest in the proceeds of the sale, so as to diminish the amount to be paid by the surety. And if this agreement as alleged in the complaint is denied or controverted by the answer, issues must be made and submitted for the purpose of establishing said agreement before the equities of the plaintiffs can be declared.

CIVIL ACTION, and application for an injunction, heard before *Watts, J.*, at the Fall Term, 1873, of the Superior Court of FRANKLIN county.

Upon the trial below, the jury found all the issues submitted to them in favor of the plaintiffs. Judgment and appeal by defendants.

The facts necessary to an understanding of the points decided, are stated in the opinion of the Court.

*Batchelor, Edwards & Batchelor,* for appellants.
*Busbee & Busbee,* contra.

PEARSON, C. J. The complaint does not set out with clearness the grounds upon which the equity of the plaintiffs is put,

but the substance of it is, that A. S. Perry had a judgment against David Stone and Jesse Person who was *his surety*. The other defendants also had judgments against said Stone; executions issued on these judgments and were levied on the land of Stone.

But sometime prior to the lien of these executions, Stone had conveyed the land to his two sons-in-law, and it was agreed between the execution creditors that a sale of the land should be made under their execution and that Mr. Davis, as agent of the creditors, should become the purchaser, and have the sheriff's deed made to A. S. Perry, who was to hold it until the cloud on the title, caused by the conveyance of Stone to his two sons.in-law, was removed and the land should then be resold for the benefit of the execution creditors and the proceeds of sale be divided in proportion to the amount of the debts, and "*that the interest of A. S. Perry should be applied as a credit to his debt, so as to diminish, by so much, the amount to be paid by Person as surety.*"

Upon this state of facts Person, the surety of Stone, has a plain equity to be subrogated to the rights of his creditor and to have the benefit of any credit that ought to be applied to his debt upon a resale of the land of which the defendant, Charles Perry cannot deprive him by any dealing with the creditor, A. S. Perry.

By way of supporting the averment that the proceeds of the second sale of the land, after the cloud on the title was removed, was to be applied *pro tanto* to discharge the debt on which Person was surety, the complaint alleges:

1st. That the land was brought to sale at the instance of Person, and upon his undertaking to prosecute an action against the fraudulent donees of Stone.

2d. That he did, after the sheriff's sale, employ counsel and institute an action in the name of A. S. Perry, to whom the sheriff's deed was made by the order of Mr. Davis, and prosecuted it with all diligence at his own expense, until his death.

The answer does not set out, with clearness the grounds upon

which the defence is put.    It admits the fact, that the execution creditors of Stone had levied on the land; that Person was the surety of Stone on the debt to Perry; that Stone had made a conveyance of the land to his two sons-in-law, and that there was an understanding that Mr. Davis should bid in the land and have the sheriff's deed made to A. S. Perry for the benefit of the execution creditors in proportion to their respective debts, and that the amount bid—that is, ten dollars—was credited ratably upon the executions.

But the answer does not controvert or deny, (unless it be done by implication,) the allegation that the amount which should be realized by Perry upon a resale after the cloud upon the title was removed, was to be applied as a *credit on his debt,* nor does it controvert the allegation that the understanding was entered into at the instance of Person, and that he undertook, and actually did, at his own expense, institute an action for the purpose of removing the cloud upon the title.    Without noticing these very material and specific allegations in the complaint, the answer sets out in general terms a denial of any understanding by Mr. Davis and Perry, or either of them, with Person, that he was to have benefit from the transaction " in any respect whatever," and if there was any such understanding, the defendant, Charles Perry, who claims to be a purchaser from A. S. Perry for value, had no notice thereof.

His Honor held, that the cause of action was confessed on the ground, we presume, that the answer does not controvert the main allegation on which the action rests, to-wit; that the amount, which should be realized by Perry upon a re-sale, after the cloud upon the title was removed, was to be applied *as a credit on his debt;* for, if so, it would necessarily relieve Person, as surety, *pro tanto,* and he had a plain right under the equity of subrogation to enforce the understanding.    I confess, that at the opening of the case, on hearing the complaint and answer read, I had a strong impression that his Honor had taken a correct view of the answer.    The principles of equity, supposing the plaintiff's allegation in respect

to the understanding to be true, were too plain for discussion. This was yielded by the counsel of the defendant, and so the case was narrowed down to one in respect to the construction of the answer.

After hearing the argument and giving the complaint and answer an attentive perusal, we have come to the conclusion that the answer does, by implication, controvert the allegation of the complaint above referred to; for the averment that the land was to be held by Perry for the benefit of the "execution creditors," does furnish an inference that Perry was to take his part of the price for which the land could be resold, and have the right to collect his judgment out of Person, which is inconsistent with the allegation in the complaint that Perry's part was to be credited on the judgment; and although the omission to deny the allegation, that the action of the execution creditors was taken at the request of Person, and that he undertook to institute a suit and carry it on at his own expense, and actually did so prosecute the suit in the name of Perry, tends strongly to corroborate the allegation of the complaint, still these facts do not have the effect *per se*, to make out the plaintiff's cause of action.

There is error, judgment reversed and *venire de novo.*

The parties will ask leave to amend the pleadings, if so advised, so that a distinct issue may be submitted to a jury, to-wit; "was it the understanding of the parties that the amount realized by A. S. Perry, upon a resale of the land after the cloud upon the title, was removed, should be applied as a credit upon his judgment, so as to relieve Person to that amount. Or was it the understanding of the parties that the amount realized by A. S. Perry, upon a re-sale of the land, after the cloud upon the title was removed, was to enure to the exclusive benefit of A. S. Perry, and that he was to be at liberty to collect his judgment, out of Jesse Person, giving no credit on the judgment, for what he should realize by a re-sale of the land.

This is the point on which the action turns, and it is to be

regretted that the pleadings did not set out the case with clearness enough to have enabled the counsel to frame these issues at the outset. We call attention to the question whether A. S. Perry, who is charged in the complaint with a breach of confidence, is not a necessary party.

Per Curiam. Judgment reversed and *venire de novo.*